UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Jackie Hughes and  
Barbara Hughes,

       Debtors.

_____/

Case No. 09-55761  
Chapter 13  
Hon. Walter Shapero

## OPINION IN CONNECTION WITH TRUSTEE'S OBJECTION TO DEBTORS' POST CONFIRMATION PLAN MODIFICATION

The matter before the Court is Debtors' proposed Post-Confirmation Plan Modification (Docket No. 70) and the Trustee's Objection (Docket No. 73) thereto. The legal issue before the Court is whether the Plan Modification meets the requirements of § 1329(b)(1), requiring modifications to meet the "best interest" or "liquidation" test of § 1325(a)(4). Specifically, the Court must determine whether the "liquidation test" should be determined as of the confirmation date of the original plan or as of the effective date of the modified plan.

### I. BACKGROUND

Debtors' First Amended Chapter 13 Plan was confirmed on October 9, 2009. Debtors' Plan required them to make monthly payments of $2,341.68 over thirty-six months and to remit a lump sum payment of $36,542.68 in month thirty-six of the Plan. The liquidation analysis contained in Debtors' Plan requires them to pay no less than $30,705.00 to class 8 general unsecured creditors.

The mandated $36,542.68 lump sum payment in month 36 of the Plan referred to in the Plan reflected Debtors' anticipated estimated proceeds from the sale of property located at 27670 Garrett Street, Bonita Springs, Florida ("Property"). That Property was part of the probate estate of Mary Ellen Hughes, Debtor husband's late mother. Debtor husband and his two sisters, JoAnn and Joyce, all have an interest in that Property. Prior to the confirmation of Debtors' Plan, Joyce indicated that she was interested in purchasing the Property. Debtors' proposed payment of the $36,542.68 represented his estimated share of the anticipated proceeds of a future

1

sale of the Property to Joyce or someone else.[1] Debtors testified that Joyce has lived at the Property since the confirmation of their Plan, that she has not yet purchased the Property, and that she has been unresponsive and unwilling to cooperate with them or the personal representative of the probate estate regarding sale of the Property to either herself or to some third party buyer. Debtors further testified that the Property may be sold at a tax sale due to failure to have paid some $1,800 in property taxes.

On January 20, 2011, Debtors filed their Post-Confirmation Plan Modification ("Plan Modification"). In that Plan Modification, Debtors are requesting to (1) lower their plan payments from $2,341.68 to $1,804.60; (2) waive the lump sum payment of $36,542.68 due in month thirty-six of their plan; and (3) by reason thereof, decrease the base amount available for payment to Class 8 general unsecured creditors from $61,037.00 to $16,134.04. The Trustee objected to the proposed Plan Modification, arguing that: (a) it fails to comply with 11 U.S.C. § 1325(a)(4), in that the value of the property to be distributed under the amended plan on account of each allowed unsecured claim is less than the amount that would be paid on such claim if the estate of the Debtors was liquidated under a Chapter 7; (b) although Debtors are obligated to remit 100% of future income tax refunds to the Trustee for distribution, the Trustee has not received any tax refunds or information regarding Debtors' tax returns since confirmation; and (c) the proposed waiver of the lump sum payment due in month thirty-six of the plan is premature. The parties have since agreed to a proposed reduction in plan payments due to Debtors' decrease in retirement income. The Trustee's other objections remain outstanding and are the subject of this opinion.

## II. DISCUSSION

11 U.S.C. § 1329(b) states, in relevant part: "At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to – (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan . . . ." Pursuant to § 1329(b), "the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section" and "the plan as modified becomes the plan unless, after notice

---

[1] The sale price of the Property was apparently estimated or decided on at the time of the confirmation of Debtors' Plan and is corroborated by an appraisal and an assessment of comparable properties in the area at that time.

and a hearing, such modification is disapproved." 11 U.S.C. § 1329(b)(1) and (2). One of the requirements that must be met in order for the court to approve the Debtors' requested Plan Modification is the "best interests test" or "liquidation test" set forth in 11 U.S.C. § 1325(a)(4). That section states that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date". 11 U.S.C. § 1325(a)(4). In order to determine whether the Debtors have met the requirements of the "liquidation test," the Court is required to determine the time at which the liquidation analysis must be performed. Courts that have considered this matter do not agree as to whether the applicable date for determining the "liquidation test" for a post-confirmation plan modification is the effective date of the original plan or the effective date of the modified plan. Compare *In re Forbes*, 215 B.R. 183 (8th Cir. BAP 1997) (holding that the effective date of the modified plan is the same as the effective date of the original plan and, therefore, the effective date for determining the "liquidation test" is the effective date of the original plan) with *In re Barbosa*, 236 B.R. 540 (Bankr. D. Mass. 1999) (holding that the effective date of the plan for purposes of the "liquidation test" at modification after confirmation "is the effective date of the plan as modified"), *aff'd* on other grounds, 243 B.R. 562 (D. Mass.), *aff'd* 235 F.3d 31 (1st Cir. 2000); *In re Jefferson*, 299 B.R. 468 (Bankr. S.D. Ohio 2003); *In re Morgan*, 299 B.R. 118 (Bankr. D. Md. 2003).

After reviewing the existing case law and the language of §§ 1329(b) and 1325(a)(4), the Court concludes that the appropriate date for performing the "liquidation test" is the effective date of the modified plan. *See In re Barbosa*, 236 B.R. at 542. The Trustee argues that the facts of those cases can be distinguished from those in this case because those cases dealt with an increase in the value of the property, thus benefiting the creditors, not a decrease in value as is present in this case. Although those cases dealt with an increase in value, the Court does not believe that such should be a distinguishing factor.

In this case, it appears, and is the premise of this opinion, that if the proper date were held to be the effective date of the originally confirmed plan, Debtor will not be able to meet the liquidation test, whereas if the proper date is the effective date of the modification, Debtor will. That is so primarily because, as of the latter date, the value of the interest in the Property will be completely excluded in calculating the distributions under the plan (as will, as previously

3

indicated, the reductions in Debtors' income since the original confirmation date). In the specific terms of the instant case, the plan that was confirmed was an amended plan. Its liquidation analysis calculated that payments under the proposed thirty-six month plan would be the sum of (a) pay period payments adding up to $84,300.48, plus (b) the indicated lump sum payment of $36,542.68 arising out of the anticipated sale of the Property, for a total of $120.843.16. From that figure, $59,806.16 was subtracted, that amount representing trustee's fees, attorney's fees, and payments on secured claims, leaving net funds available for unsecured creditors of $61,037.00. This latter figure, when contrasted with the estimated dividend to unsecured creditors in a Chapter 7 case of $30,705.74, clearly satisfied the § 1324(a)(5) liquidation test as of that plan confirmation date. That Chapter 7 liquidation calculation, arriving at that $30,705.74 figure, was derived from non-exempt amounts from Debtors' other assets available of zero, plus the $36,542.00 available from the Property, which, when reduced by administrative and liquidation expenses, produced a net available to unsecured creditors in a theoretical Chapter 7 case of the indicated $30,705.74.

The proposed modification (a) eliminates the mandatory distribution of $36,542.68 in the 36th month of the Plan, and (b) because of Debtors' decrease in income, also reduces what would be available from that source for the rest of the plan period to $8,361.28 (that being the result of prospectively reducing the monthly payments for the some sixteen months remaining in the thirty-six month plan from $2,341.68 per month to $1,804.60 per month). It should be noted that, theoretically at least, Debtor has up to now made some 20 months of plan payments at $2,341.68, for a total of some $46,833.00. How would the Trustee's position, that the liquidation test date for purposes of the modification should be October 9, 2009, play out in these circumstances? Would Debtor still be required to include the value of Debtors' interest in the Property in both the Chapter 7 liquidation analysis and the analysis regarding the amounts to be distributed under the plan, even though the modification proposes it be completely eliminated from distribution? If so, what is the point of requiring the liquidation test to still be met when evaluating a modification? Given such questions, logic requires that, in these circumstances, the figure representing Debtors' interest in the Property be eliminated from the calculations of both what the amount that would be paid under the Chapter 13 plan and the amount that would be paid based on the Chapter 7 theoretical liquidation test. The result of such is that the liquidation test will be met in this case. The point of requiring the liquidation test to be re-applied (and thus

updated) in the instance of a modification only makes sense if it is calculated in light of the substance of the proposed modification, particularly in a case such as this, where the proposed modification contemplates elimination of something that materially impacts both the Chapter 13 and Chapter 7 figures. Furthermore, in this particular case, any concern about the Debtor obtaining a later windfall at the expense of the creditors is ameliorated by Debtors' express willingness to commit to the Plan any proceeds of the disposition of their interest in the Property taking place during the plan period. This willingness was explicitly stated at the hearing and in Debtors' post-petition brief and should be incorporated into any modification proposal. In substance, by reason thereof, the original mandated lump sum payment (not conditioned on there having in fact been a sale) becomes a mandated payment only if, as, and when a sale occurred during the plan period. If the Trustee is agreeable to that modified modification, then it would appear that the initially proposed modification, as thusly further modified, should, and would, be approved by the Court. If it is not agreeable to the Trustee, the Court needs to deal with the Trustee's other objection.

That other objection is that the portion of the proposed Plan Modification regarding the lump sum payment due in month thirty-six of the plan is prematurely sought. The Court agrees. This proposed Plan Modification was sought in month fourteen of a thirty-six month plan. Further, there may or may not be a pending or completed tax sale on the Property and Debtor husband's sister or some other third party may purchase the Property prior to the month thirty-six of the Plan. There remains a significant amount of time in this case for any, or none, of those scenarios to play out. As noted, the Debtors have indicated that, even if the Court grants the letter of their Plan Modification (waiving that payment completely), they are now willing to commit any proceeds of the sale of the Property if such is accomplished within the term of their confirmed Plan. Instead of determining that issue now, when there are several undetermined scenarios with regard to the disposition of the Property which might have an effect on the analysis under the "liquidation test," the Court concludes that it would be more appropriate to deny the proposed Plan Modification, but without prejudice, at this time. At a more appropriate time, when either (1) the fact or likelihood of the ultimate disposition, if any, of the Property becomes clearer, or (2) the thirty-six month Plan is nearer completion. At that point, the Debtors are free to file a new plan modification (including what Debtors have alternatively proposed) and

5

the Court will consider such at that time in light of its conclusion that the appropriate date for the "liquidation test" is the effective date of the modified plan.

### Res Judicata Effect of Confirmation Order and Tax Returns/Refunds

The Trustee also relies on 11 U.S.C. § 1327(a), which states that the provisions of a confirmed plan bind the debtor and creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. The Trustee argues that, because Debtors provided a value for the Property and such was not contested prior to confirmation, the confirmation order entered in this case is res judicata as to the issue of the value of the Property and such cannot be modified.

The Trustee also argues that the proposed Plan Modification should be denied because, although Debtors are obligated to remit 100% of future income tax refunds to the Trustee for distribution, the Trustee has not received any tax refunds or information regarding Debtors' tax returns since confirmation.

Based on the Court's above referred to conclusions and/or the possibility that the Trustee might agree to the indicated alternate modification of the lump sum waiver provision, the Court will not decide these issues at the present time. If Debtors choose to file a Plan Modification at some later date, the Court will consider these issues if the Trustee chooses to object on these bases at that time. Trustee has the option to file a motion to dismiss the case if the issues regarding the tax returns and refunds are not resolved in due course and it is inappropriate to decide them incident to the required modification.

### III. CONCLUSION

Accordingly, Debtors' Plan Modification will be denied, without prejudice, unless the parties agree now to some other disposition. The Trustee shall prepare and present an appropriate order.

.

                    **Signed on October 05, 2011**
                                                          **/s/ Walter Shapero**
                                                **Walter Shapero**
                                                **United States Bankruptcy Judge**